UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL PICKETT,

                    Plaintiff,                    No. 04-CV-73722-DT

vs.                                                Hon. Gerald E. Rosen

JOHN E. POTTER, POSTMASTER
GENERAL OF THE UNITED STATES,

                    Defendant.
_____/

OPINION AND ORDER REGARDING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on _____December 15, 2005_____

PRESENT:   Honorable Gerald E. Rosen
                        United States District Judge

## I. INTRODUCTION

Plaintiff Michael Pickett, a former U.S. Postal Service employee, filed the instant

action appealing the Final Decision of the Office of Federal Operations on his EEOC

petition for review of a Final Order issued by the Merit System Protection Board

("MSPB") concerning his claims of disability discrimination and retaliation against the

Postal Service. The case is presently before the Court on Defendant's Fed. R. Civ. P.

12(b)(1) motion to dismiss for lack of jurisdiction and for summary judgment pursuant to

Fed. R. Civ. P. 56. Plaintiff has responded to Defendant's Motion to which response,

1

Defendant has replied.  The Court heard oral argument on this matter on November 17, 2005.  At the close of the hearing, Plaintiff's counsel requested, and was granted leave to supplement the record with additional evidence of EEO complaints filed by Plaintiff,[1] and the Government has responded to Plaintiff's supplemental brief.

Having reviewed and considered the parties' briefs, supporting evidence, and the entire record of this matter, and having further considered the oral arguments of counsel, the Court is now prepared to rule on this matter.  This Opinion and Order sets forth the Court's ruling.

## II.  PERTINENT FACTS

Plaintiff Michael Pickett is a former U.S. Postal Service employee.  Pickett worked for the Postal Service from 1998 until he was removed from service on November 30, 2001.  At the time of his removal, Plaintiff was a full-time mail carrier at the Taylor, Michigan Post Office.

In the summer of 2001, there was a problem at the Taylor Post Office with employees bringing "steels" onto the workroom floor.  A "steel" is a large postal cart used to move mail parcels from the loading dock to the mail trucks.  Postal Service managers felt that the steels contributed to unsafe congestion on the floor and requested

---

[1]  Specifically, Plaintiff requested and was granted leave to supplement the record with evidence of EEO complaints more proximate in time to his termination than the December 23, 1997, March 30, 2000, August 14, 2000 and November 2, 2000 EEO complaints and the July 11, 2001 settlement of his last EEO complaint that he relied upon in his Response Brief.

that mail carriers not use them except to transport their load of mail from the dock to their trucks.[2]  The problem of steels on the floor was discussed at a Safety Committee meeting on August 8, 2001, which Plaintiff attended.  *See* Defendant's Ex. 12, p. 3.

On August 21, 2001, Plaintiff's supervisor, David Sledge noticed that Plaintiff had a steel at his work station on which Plaintiff had placed his personal belongings.  Sledge told Plaintiff that he was going to take the steel out to the dock and instructed him to take his personal belongings off of the steel so that he could do so, but Plaintiff refused to follow Sledge's instruction.  Sledge then instructed Plaintiff a second time to remove his belongings from the steel, and again, Plaintiff said "no."  After it became apparent that Plaintiff would not follow his instructions, Sledge told Plaintiff that he was giving him a "direct order" to remove his belongings from the steel.  Plaintiff refused to obey the direct order stating, "This is not a military installation; I do not receive direct orders; management may ask or instruct."  Sledge told Plaintiff that he was going to move the steel out to the dock, whereupon Plaintiff responded, "If you touch that steel, we are going at it."

Sledge interpreted Plaintiff's last remark as a physical threat and immediately informed Postmaster Joseph Bodary about the incident.[3]  Bodary immediately called

_____

[2]  The carriers were told to use canvas bins that had rollers on them while sorting and gathering the mail at their work stations in the workroom.

[3]  It is undisputed that Plaintiff had a history of problems taking orders and he has filed a number of grievances and EEO complaints against his various supervisors throughout the course of his employment challenging them.  *See* Plaintiff's Exhibits 001-

3

Plaintiff in to discuss the incident. Plaintiff admitted to Bodary that he refused to follow Sledge's instructions and refused to obey his direct order.  He also admitted making the "if you touch the steel, we are going at it" statement.  Following the interview, Bodary placed Plaintiff on Emergency Suspension, and on October 5, 2001, Plaintiff was served with Notice of Proposed Removal.  The Notice, signed by Supervisor John Plona and Postmaster Bodary, proposed to remove Plaintiff from the Postal Service for "Unbecoming Conduct," charging him with failing to follow instructions, refusing to obey a direct order, and making a threatening statement to Supervisor Sledge.  Although the Notice invited Plaintiff to respond to the charges he did not do so.  Accordingly, on November 23, 2001, Thomas Halcisak, Post Office Operations Manager B, issued a Letter of Decision, removing Plaintiff from the Postal Service effective November 30, 2001.

ADMINISTRATIVE PROCEEDINGS

On August 23, 2001, i.e., two days after the incident giving rise to Plaintiff's termination, Plaintiff contacted the Equal Employment Opportunity (EEO) Office of the Postal Service and alleged that he had been placed on Emergency Suspension based on his physical disability (diabetes) and in retaliation for having previously filed EEO complaints.  He sought EEO counseling again on October 10, 2001, after he received the Notice of Removal.  Thereafter, on October 26, 2001, Plaintiff filed "mixed case EEO

---

014.

complaint"[4] with the Postal Service.

On November 13, 2001, the local Branch of the National Association of Letter Carriers (the "NALC" or the "union") filed a Step A grievance on behalf of Plaintiff Pickett challenging his removal under the collective bargaining agreement. The grievance was not resolved at Step A and, therefore, on December 4, 2001, the union proceeded to Step B where Plaintiff's grievance was discussed by a Joint Dispute Resolution Team consisting of representatives from the NALC and the Postal Service. On December 13, 2001, the Joint Team declared an impasse on the grievance. Accordingly, on December 21, 2001, the NALC took the matter to arbitration. A hearing

---

[4] A "mixed case complaint" is a complaint of employment discrimination filed with a Federal agency based on race, color, religion, sex, national origin, age, handicap, or reprisal related to or stemming from an action that may be appealed to the Merit Systems Protection Board (the "MSPB"). *See* 29 C.F.R. § 1614.302(1). "The complaint may contain only an allegation of employment discrimination or it may contain additional allegations that the MSPB has jurisdiction to address." *Id.*

The procedures involved in a mixed case complaint and appeal are as follow:

First an aggrieved person, must make an election of whether to file his complaint with the agency (here the Postal Service) or directly with the MSPB. [Plaintiff Pickett elected to file his complaint with the agency.] The agency then conducts an investigation and issues a final decision. If the complainant is dissatisfied with the agency's final decision on the mixed case complaint, the complainant may appeal the matter to the MSPB (not the EEOC) within 30 days of receipt of the agency's final decision. The MSPB then will hear the appeal and issue a decision. If the appellant is not satisfied with that decision, he has 30 days to seek Board review. If dissatisfied with the Board's review decision, the appellant may then proceed with further administrative review by filing a petition for review with the EEOC, or the appellant may proceed directly from the MSPB review to the courts. [as discussed *infra*, Plaintiff Pickett elected EEOC review.] Appeal from the EEOC's decision is to the federal district court. *See* 29 C.F.R. § 1614.302; *see also* Defendant's Ex. 15.

was held before Arbitrator Barry Goldman on February 15, 2002. After considering the evidence, on March 13, 2002, Arbitrator Goldman issued a decision in favor of the Postal Service finding that Plaintiff's removal was justified under the collective bargaining agreement because of his insubordination and threatening statement to Supervisor Sledge.

Meanwhile, Plaintiff's mixed case EEO complaint was investigated and, on July 17, 2002, a final agency decision of no discrimination or retaliation was issued by the Postal Service. Plaintiff thereafter filed a mixed case appeal with the MSPB on August 16, 2002. On January 14, 2003, an MSPB hearing was held before Administrative Judge Nina Puglia. At this hearing, Plaintiff's attorney withdrew the disability discrimination claim during his opening statement.[5]

On March 28, 2003, Judge Puglia rendered her decision affirming the Postal Service's action. Although Plaintiff had not only appealed the agency's final decision on discrimination but also sought review of his removal for "unbecoming conduct," the Administrative Judge determined that Plaintiff was collaterally estopped from obtaining such review because the Postal Service's "unbecoming conduct" justification for his removal had already been reviewed by an arbitrator.[6] Citing *Kroeger v. U.S. Postal*

---

[5] During the MSPB proceedings, Plaintiff was represented by the same attorney who is representing him in ths action.

[6] As the Administrative Judge noted in her March 28, 2003 decision,

As a preference-eligible employee in the Postal Service, the appellant can file a grievance and a Board appeal from the same action, but he does not have a right of Board review of an arbitration decision. Section 7121(d) of

*Service*, 865 F.2d 235, 239 (Fed. Cir. 1988), and its holding that an arbitration award may have collateral estoppel effect on an appeal brought by a preference-eligible Postal Service employee if the requirements for collateral estoppel are met, Judge Puglia found that because the arbitrator sustained the Postal Service's sole charge of unbecoming conduct after that charge was actually litigated in the arbitration, and because that issue was identical to that involved in Plaintiff's MSPB appeal, the Judge determined that the Board was collaterally estopped from re-examining Plaintiff's guilt or innocence on the charge.

---

Title 5 of the United States Code provides for Board review of an arbitrator's award where an appellant shows that: (1) the subject matter of the grievance is one over which the Board has jurisdiction; (2) the issues raised before the arbitrator or the Board include a claim of prohibited discrimination; and (3) a final decision has been issued by the arbitrator. *Sands v. Department of Labor*, 88 M.S.P.R. 281, 285 (2001). Section 7121 does not, however, apply to the Postal Service. *See Fedon v. U.S. Postal Service*, 78 M.S.P.R. 657, 660 (1998). There is no legal authority for Board review of a postal employee's arbitration decision. *See Farrelly v. U.S. Postal Service*, 86 M.S.P.R. 230, 233 (2000), *aff'd* 13 Fed. Appx. 910 (Fed. Cir. 2001).

*See also*, 5 C.F.R. § 1201.154(d) [Appeals before the Merit System Protection Board]:

**This paragraph does not apply to employees of the Postal Service** or to other employees excluded from coverage of the federal labor-management relations laws at chapter 71 of title 5, United States Code. If the appellant has filed a grievance with the agency under a negotiated grievance procedure, he may ask the Board to review the final decision on the grievance if he alleges before the Board that he is the victim of prohibited discrimination. Usually, the final decision on a grievance is the decision of an arbitrator. . . .

7

With respect to the retaliation claim, Judge Puglia concluded that Plaintiff failed to prove that Supervisor Plona and Postmaster Bodary -- i.e., the two supervisory employees who proposed that he be removed from service -- were aware of Plaintiff's EEO activity before they proposed his removal or that Thomas Halcisak was aware of his EEO activity when he made the ultimate decision to remove him.  The Administrative Judge further found that Plaintiff failed to prove a nexus between his EEO activity and his removal.

Plaintiff thereafter petitioned for Board review of Judge Puglia's decision but that petition was denied on April 12, 2004.  Following this denial, on May 12, 2004, Plaintiff filed a petition for review with the EEOC.  On August 5, 2005 the EEOC issued a final decision concurring with the MSPB's finding of no discrimination.  At the end of its decision, the Commission also informed Plaintiff that there was no further right of administrative appeal but that he had a right to file a civil action:

> This decision of the Commission is final, and there is no further right of administrative appeal from the Commission's decision.  You have the right to file a civil action in an appropriate United States District Court, based upon the decision of the Merit Systems Protection Board, within **thirty (30) calendar days** of the date that you receive this decision. . . .

*See* Defendant's Ex. 18.

Plaintiff was further informed that

> For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed.  I certify that this decision was mailed to petitioner, petitioner's representative (if applicable), the agency, and the Merit Systems Protection Board on:

August 5, 2004.

*Id.*

On September 24, 2004, Plaintiff filed the instant action alleging claims of handicap discrimination in violation of the Rehabilitation Act, 29 U.S.C. § 701 *et seq.* (Count I) and retaliation (Count II).

Pickett does not dispute timely receipt of *a part* of the EEOC's decision. However, his representative, Mark Zysk,[7] has provided an Affidavit in which he states that he did not receive a complete copy of the EEOC's decision,[8] and that the copy of decision that he received, as well as the copy that Mr. Pickett received, did not contain the signature line or the statement of appeal rights.  Zysk claims that he contacted the Office of Federal Operations of the EEOC "and spoke with them on several occasions" and that "they admitted they had made a mistake, and that they would send out a new, complete decision with the appeal rights and the complete decision, with the signature page attached."  *See* Zysk Affidavit, Plaintiff's Appendix pg. 60.

The EEOC mailed Zysk another copy of the decision at his address of record, and specifically advised him that it had originally mailed the decision to the parties on August 5, 2004.  Appended to the decision, however, was a "Certificate of Second Mailing"

---

[7] Mr. Zysk apparently was identified by Plaintiff as his representative for purposes of the EEOC proceedings.

[8] Zysk claims to have only received the first page of the Commission's two-page decision.  The second page contains the conclusion of the EEOC's decision, the signature line and the advice of appeal rights.

9

signed by an Equal Opportunity Assistant, which stated,

> "For timeliness purposes, I certify that this decision was mailed to the
> complainant and the Agency on the below stated date:
>
>                           August 24, 2004
>                           Date

*See* Complaint Exhibit 4.

## III.  DISCUSSION

## A.  STANDARDS APPLICABLE TO MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is proper "'if the pleadings, depositions, answer to
interrogatories, and admissions on file, together with the affidavits, if any, show that there
is no genuine issue as to any material fact and that the moving party is entitled to
judgment as a matter of law.'"  Fed. R. Civ. P. 56(c).

Three 1986 Supreme Court cases -- *Matsushita Electrical Industrial Co. v. Zenith
Radio Corp.*, 475 U.S. 574 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986);
and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) -- ushered in a "new era" in the
standards of review for a summary judgment motion.  These cases, in the aggregate,
lowered the movant's burden on a summary judgment motion.[9]  According to the *Celotex*
Court,

In our view, the plain language of Rule 56(c) mandates the entry of summary

---

[9]"Taken together the three cases signal to the lower courts that summary judgment
can be relied upon more so than in the past to weed out frivolous lawsuits and avoid
wasteful trials."  10A C. Wright, A. Miller, M. Kane, Federal Practice & Procedure, §
2727, at 35 (1996 Supp.).

10

judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

*Celotex*, 477 U.S. at 322.

After reviewing the above trilogy, the Sixth Circuit established a series of principles to be applied to motions for summary judgment. They are summarized as follows:

* The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

* The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

* The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

* The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent  must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is plausible.

*Betkerur v. Aultman Hospital Association*, 78 F.3d 1079, 1087 (6th Cir. 1996).  *See also, Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989).  The Court will apply these standards in deciding Defendant's Motion for Summary Judgment in this case.

B.    THIS COURT HAS JURISDICTION TO ENTERTAIN PLAINTIFF'S ACTION

11

Defendant first claims that this Court is without jurisdiction to entertain this action because Plaintiff's Complaint was not timely filed.

5 U.S.C. § 7703(2)(b) provides that a civil MSPB discrimination case shall be filed within 30 days after the date the individual filing the case received notice of the judicially reviewable action.  As indicated above, the notification of the 30-day time limitation for filing a complaint was included in the EEOC's final decision.  This 30-day limitation period is a jurisdictional prerequisite to filing suit in federal district court.  *See Johnson v. United States Postal Service*, 64 F.3d 233, 237-38 (6th Cir. 1995); *Dean v. Veterans Admin. Regional Office*, 943 F.2d 667, 669 (6th Cir. 1991), *vacated and remanded on other grounds*, 503 U.S. 902 (1992).  Furthermore, unlike other statutes of limitations, this limitations period is not subject to equitable tolling.  *Id.*  Thus, if the complaint is not filed within 30 days after receipt of the decision, it must be dismissed for lack of jurisdiction.

Defendant here argues that because the EEOC decision in this case was originally sent to Plaintiff and his representative on August 5, 2004 at their addresses of record, it must be presumed that the decision was received five days after it was mailed, i.e., on August 10, 2004, and therefore, Plaintiff should have filed the instant complaint within 30 days thereof, i.e., on or before September 9, 2004.

However, in *Graham-Humphrey v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 557 (6th Cir. 2000), the Sixth Circuit held that the jurisdictional limitation

period "begins running on the fifth day following the EEOC mailing of a notification to the claimant's address of record, *unless the plaintiff rebuts that presumption with proof that he or she did not receive notification within that period*." 209 F.3d 557 (emphasis added).  The Court finds that Plaintiff here has presented sufficient evidence to rebut the presumption in this case.

As indicated, Plaintiff does not dispute that he received the first page of the EEOC decision; but he does dispute having received a *complete* copy of the decision.  It is the second page of the two-page decision that sets forth the Commission's determination of no discrimination.  *See* Defendant's Ex. 18.[10]  This second page also contained the notification of "Petitioner's Right to File a Civil Action," which included notification of the 30-day time limit for doing so.  *Id.*

Defendant does not dispute that Plaintiff's representative, Mr. Zysk, contacted the EEOC and informed the Commission of the defective copy of the decision originally

---

[10]  The first page of the decision sets forth only the agency's charge of "unbecoming conduct," the procedural history of the MSPB proceedings, a statement of the EEOC's jurisdiction and the standard of review.  *See* Defendant's Ex. 18.  The second page of the decision sets forth the Commission's holding:

> Based upon a thorough review of the record, it is the decision of the Commission to concur with the final decision of the MSPB finding no discrimination.  The Commission finds that the MSPB's decision constitutes a correct interpretation of the laws, rules, regulations, and policies governing this matter and is supported by the evidence in the record as a whole.

*Id.*

13

received by Plaintiff and does not dispute that a complete second copy was not sent to Plaintiff until August 24, 2004.  However, notwithstanding that the Certificate of Second Mailing specifically provided that the certification "[f]or timeliness purposes" was given on "August 24, 2004," Defendant wants the Court to ignore the second mailing and hold Plaintiff to a deadline calculated from the date of the original mailing of the defective copy of the decision.  Due process demands otherwise.

As indicated, Plaintiff has provided evidence, in the form of his representative's affidavit, that he only received the first page of the EEOC's decision.  Plaintiff's evidence further establishes that he did not receive the second page, which not only was the only page of the decision which informed him of the Commission's adverse (and reviewable) decision but which also provided him with notification of his right to file a civil action, notification of the 30-day period of limitations, and notification of the date upon which the 30-day limitation period would begin to run.  Without having received the complete decision, Plaintiff would not have reason to know that he had anything to appeal in a civil action, much less the date by which he had to do so.

Furthermore, the EEOC -- at least implicitly, if not explicitly -- acknowledged the deficiency of its original mailing by providing a new certificate of mailing along with the second copy of the decision it sent to Plaintiff which specifically certified that "for timeliness purposes," the decision was mailed to Plaintiff on August 24, 2004.    There would be no need for adding "for timeliness purposes" to the certification of mailing if

14

the EEOC did not intend for Plaintiff to rely upon this date to calculate the 30-day limitations period.

In sum, the Court finds that Plaintiff has sufficiently rebutted the presumption of receipt within five days of the original mailing of the August 5, 2004 EEOC decision and was, therefore, entitled to rely upon the August 24, 2005 Certification of Second Mailing for purposes of calculating the 30-day time limit for filing his Complaint.  Plaintiff met this time limit as he filed his Complaint on September 24, 2005.  And, Plaintiff's Complaint, having been timely filed within the 30-day statutory period, the Court finds that it has jurisdiction to entertain this action.  Accordingly, Defendant's Motion to Dismiss for lack of jurisdiction is denied.

C.    <u>PLAINTIFF HAS FAILED TO ESTABLISH A CLAIM OF RETALIATION</u>

Defendant also has moved for summary judgment on the merits of Plaintiff's claims of disability discrimination and retaliation.  However, Plaintiff stated in his Response -- and his counsel confirmed at oral argument -- that he has withdrawn his claims of disability discrimination and is only appealing the administrative decision with regard to his claim of retaliation.  *See* Plaintiff's Response, ¶ 2 and Response Brief, p. 4. Accordingly, the Court will address the merits of Defendant's motion only with respect to this claim.

Section 503 of the Americans with Disabilities Act, 42 U.S.C. § 12203,[11] provides:

---

[11]  The standards used to determine whether there has been a violation of the Rehabilitation Act are the standards applied under the provisions of sections 501 through

15

**(a) Retaliation**

No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

In order to state a claim of retaliation under the Rehab Act or the ADA, a plaintiff

must establish:

1. That he participated in a protected activity;

2. That his employer was aware of his participation;

3. That the employer subsequently took action adverse to plaintiff; and

4. That there is a causal connection between the protected activity and the adverse

employment action.

*Walborn v. Erie County Facility*, 150 F.3d 584, 588 (6th Cir. 1998); *see also Moore v.*

*Kuka Welding Systems*, 171 F.3d 1073, 1079 (6th Cir. 1999) (retaliation claim under Title

VII); *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 860 (6th Cir. 1997) (same) *Canita v.*

*Yellow Freight Systems*, 903 F.2d 1064, 1066 (6th Cir. 1990), *cert. denied*, 498 U.S. 984

(1990).[12]  Because this test for establishing a *prima facie* case of retaliation is phrased in

the conjunctive, all four prongs must be satisfied.  *Fenton v. HiSAN, Inc.*, 174 F.3d 827,

832 (6th Cir. 1999).  Plaintiff has the ultimate burden of proving that the complained of

---

504 of the ADA.  29 U.S.C. § 791.

[12]  Retaliation claims are treated the same whether brought under the ADA or Title VII.  *Penny v. UPS*, 128 F.3d 408, 415 (6th Cir.1997).

16

adverse employment action would not have occurred if he had not engaged in the protected activity. *Id.* at 583.

The federal employment discrimination statutes prohibit retaliatory conduct by an employer in two situations: (1) when an employee has made a charge of discrimination or filed a complaint of discrimination with the EEOC or otherwise participated in enforcement proceedings before the agency ("the participation clause"); or (2) when an employee "has opposed a violation [of the Act ]" (the "opposition clause"). *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1312 (6th Cir. 1989). As the Sixth Circuit observed in *Booker*, "The distinction between employee activities protected by the participation clause and those protected by the opposition clause is significant because federal courts have generally granted less protection for opposition than for participation in enforcement proceedings." *Id.* The participation clause extends to persons who have "participated in any manner" in enforcement proceedings. *Id.* On the other hand, "the opposition clause" does not protect all "opposition" activity. In opposition cases, courts are required "to balance the purpose of the Act to protect persons engaging reasonably in activities opposing discrimination, against Congress' equally manifest desire not to tie the hands of employers in the objective selection and control of personnel." *Id.* (citations omitted).

It is undisputed in this case that Plaintiff engaged in protected participation activity -- he had filed several EEO complaints prior to his termination -- on December 23, 1997, and on March 30, August 14, and November 2, 8, and 20, 2000. These

17

complaints involved a variety of complaints such as (1) not being allowed to carry his diabetes accutest kit with him at work and his need to snack on the job if needed to maintain his blood sugar level; (2) being forbidden to roll down the windows in his delivery truck; (3) not being allowed to wear a headband while working; (4) a "special inspection" of his delivery route; and being denied his choice of EEO representative. *See* Plaintiff's Affidavit, ¶¶ 8-14 and Exhibits 001-014. *See also* Plaintiff's Supplemental Brief.[13] According to the evidence provided by Plaintiff, only the August 14, 2000 "special inspection" complaint and the November 20, 2000 denial of choice of EEO representative accused Supervisor Sledge. None of the EEO complaints involved Postmaster Joseph Bodary or Supervisor John Plona who recommended that Plaintiff be removed from service, or Thomas Halcisak, the Postal Service Operations Manager who made the ultimate decision to terminate Plaintiff's employment.[14]

---

[13] There is evidence in the sealed administrative record provided by the Postal Service that Plaintiff had a number of other complaints that were either settled without the lodging of a formal written EEO charge or were withdrawn. [*See* the "Comparison and Analysis of Prior EEO Activity" prepared by EEO investigator, Vanessa Lodge, at Admin. Rec. p. 000007.] However, as with the formal complaints which Plaintiff relies upon to support his retaliation claim, none of these pre-complaints involved any of the supervisors or managers involved in this case and all of them pre-date his termination by two years or more.

[14] Additionally, Plaintiff alleges that he engaged in protected "expressions" under the Rehabilitation Act. According to Plaintiff these protected "expressions" consisted of his requests to his supervisors concerning accommodating his necessary treatment for his diabetic condition. Requests for accommodation are treated as protected "expressions" under the ADA and require satisfaction of the same elements as retaliation for protected participation and opposition activities. *See Silk v. City of Chicago*, 194 F.3d 788, 799-800 (7th Cir. 1999); *Soileau v. Guilford of Maine*, 105 F.3d 12, 16 (1st Cir. 1997)

Thus, Defendant does not dispute that the first and third elements of a *prima facie* case of retaliation are met in this case -- that Plaintiff engaged in protected participation activities and that he was subsequently discharged.  Therefore, only the second and fourth elements are at issue.

To satisfy the second prong, plaintiff must show that the defendant knew of his exercise of this protected activity.  In this regard, the Sixth Circuit has held that where the relevant management decision-makers responsible for the complained of adverse employment action were unaware of the plaintiff's protected opposition or participation activities no *prima facie* case is established.  *See  Fenton v. HiSAN, Inc., supra*, 174 F.3d at 832.  In this case, although Plaintiff filed several EEO complaints over the course of his employment, he is unable to produce any evidence that the relevant management decision-makers involved in the decision to remove him from service  -- Supervisor John Plona and Postmaster Bodary who recommended his removal, and Post Office Operations Manager Thomas Halcisak, who made the ultimate termination decision -- were aware of his EEO activities.  Therefore, as in *Fenton*, the second element of a *prima facie* case has not been met.

However, even if the Court were to determine that the relevant decision-makers

---

(assuming without deciding that requests for accommodation fit within the purview of the retaliation provisions of the ADA).  It does not appear that the Sixth Circuit has addressed the issue of whether a request for accommodation can substitute for a protected participation or opposition activity for purposes of retaliation under the disability discrimination statutes.

were aware of Plaintiff's EEO activities, the Court finds that Plaintiff has failed to satisfy the fourth element of a *prima facie* case because he has failed to show a causal connection between his previous protected complaints and the employer's decision to terminate him.

In order to show a causal connection, a plaintiff must produce sufficient evidence from which an inference can be drawn that the adverse action would not have been taken had the plaintiff not engaged in protected activity. *See Allen v. Michigan Dept of Corrections*, 165 F.3d 405, 413 (6th Cir. 1999). *See also Zanders v. National R.R. Passenger Corp.*, 898 F.2d 1127 (6th Cir. 1990) (to establish a causal connection, the plaintiff is required to "proffer evidence 'sufficient to raise the inference that her protected activity was the likely reason for the adverse action.'" *Id.* at 1135 (citations omitted)). Although no one factor is dispositive in establishing a causal connection, evidence that the defendant treated the plaintiff differently from identically-situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation. *Moore v. Kuka Welding Systems, supra; Allen v. MDOC, supra; Moon v. Transport Drivers, Inc.*, 836 F.2d 226, 230 (6th Cir.1987).

There is nothing in the record to suggest that Plaintiff was treated differently from similarly-situated employees.[15]  Nor can Plaintiff  show a temporal connection between

---

[15]  To be deemed "similarly-situated," the individuals with whom the plaintiff seeks to compare his/her treatment must be similarly-situated "in all respects." *Stotts v. Memphis Fire Department*, 858 F.2d 289 (6th Cir. 1988); *Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (1990).  Thus, the compared individuals must have dealt with the same

his various EEO complaints and his removal from service.  *See, Booker, supra*, 879 F.2d

at 1314 (no causal connection between plaintiff's letter complaining of discrimination

and his demotion where he was not demoted until a month after his letter); *Cooper v. City

of North Olmstead*, 795 F.2d 1265, 1272 (6th Cir. 1986) (no causal link between filing of

civil rights charge and plaintiff's discharge where charge was filed four months before

discharge); *Brown v. ASD Computing Center*, 519 F. Supp. 1096, 1116 (S.D. Ohio 1981),

*aff'd*, 709 F.2d 1499 (6th Cir. 1983) (plaintiff failed to make out a *prima facie* case of

retaliatory discharge where her discharge occurred three months after she announced her

intention to consult with the EEO and four months after she was advised to contact the

EEO office.)

Here, Plaintiff points to EEO complaints he filed on  December 23, 1997, March

30, 2000, August 14, 2000, and three complaints he filed in November 2000, on

November 2, 8, and 20.   However, Plaintiff was not discharged until November 21,

2001, i.e., more than a year after the filing of his latest EEO complaint.  This is too

attenuated a time period from which it might reasonably be inferred that Defendant took

the complained of adverse employment action because Plaintiff had engaged in protected

EEO activities.[16]  A causal connection is not demonstrated if the proximity of events is

_____

supervisors, have been subject to the same standards and have engaged in the same
conduct without such differentiating or mitigating circumstances that would distinguish
their conduct or the employer's treatment of them for it.  *Id.*

[16]  Under applicable law, even Plaintiff's time line -- i.e., the month and a half
between the date on which he allegedly settled his last EEO complaint and his August 21,

21

greater than immediate. *See Clark County School District v. Breeden*, 532 U.S. 268, 273 (2001) (evidence of temporal proximity establishes causal connection only when the evidence is "very close.")

Furthermore, the Sixth Circuit has held that temporal proximity alone, without additional evidence of a retaliatory animus, will not suffice to support a finding of a causal connection. *Hafford v. Seidner*, 183 F.3d 506, 515 (6th Cir. 1999) (no *prima facie* claim of reprisal where disciplinary actions occurred two to five months after EEO activity.) During oral argument, Plaintiff claimed that Supervisor Sledge displayed retaliatory animus toward him because of his prior EEO activity. However, Plaintiff's evidence shows that the only two EEO complaints were filed against Supervisor Sledge the latest of which occurred on November 20, 2000, i.e., more than nine months prior to the incident concerning the steel and more than a year prior to his termination. That November 2000 complaint, which was totally unrelated to Plaintiff's use of a steel,[17] was settled on April 23, 2001, i.e., nearly four months before the steel incident.

The Court finds under these circumstances that the simple fact that Plaintiff's

---

2001 suspension -- is insufficient, without more, to establish a sufficient temporal nexus to withstand summary judgment on a retaliation claim. *See Booker v. Brown and Williamson, supra* (one month period between protected activity and plaintiff's demotion too attenuated to establish a causal nexus). This is particularly true here where the alleged triggering event for the retaliatory motive is a settlement of a claim, which indicates the employer's agreement with its resolution.

[17] It concerned Sledge's alleged denial of Pickett's choice of an EEO representative.

termination occurred after he had made a number of EEO complaints of unfair treatment is insufficient to establish the requisite causal link to sustain a retaliation claim.

Moreover, even assuming *arguendo* that Plaintiff has made out a *prima facie* claim, Defendant has articulated a legitimate, non-discriminatory reason for his discharge:  his "unbecoming conduct" stemming from his refusal to follow a direct order and threatening a supervisor.[18]

Defendant having articulated a legitimate, non-discriminatory/non-retaliatory reason for terminating Plaintiff's employment, the burden shifts to Plaintiff to establish that this articulated reason is but a pretext for the action undertaken by Defendant. *Zanders, supra*, 898 F.2d at 1135.

To prove pretext, Plaintiff must show by a preponderance of the evidence either that the proffered reason had no basis in fact, did not actually motivate the employer's action, or was insufficient to motivate the action.  *Manzer v. Diamond Shamrock Chemicals Co*., 29 F.3d 1078, 1084 (6th Cir.1994).

Plaintiff cannot meet this burden.  As set forth above, Plaintiff has admitted that he disobeyed a direct order and threatened Supervisor Sledge, "If you touch [my] steel, we are going at it."  Further, Plaintiff does not dispute that this misconduct violated postal service regulations and that the misconduct constituted a dischargeable offense under the

---

[18]  The *McDonnell Douglas/Burdine* burden shifting paradigm applicable in disparate treatment discrimination cases is applicable to retaliation claims, as well.  *See, Zanders v. National R.R. Passenger Corp*., *supra*, 898 F.2d at 1134.

regulations.  Thus, he cannot establish that Defendant's proffered reason had no basis in fact and did not actually motivate the decision to discharge him.

Plaintiff, however, claims that his threatening Sledge that "we are going to go at it" if he touched his steel was insufficient to motivate the decision to fire him.  In support of this claim, Plaintiff alleges in his Affidavit that seven other postal employees engaged in what he claims was more egregious misconduct but were not discharged.  *See* Plaintiff's Affidavit, ¶ 69.[19] As noted above in order to rely upon comparables, the compared individuals <u>must have dealt with the same supervisors, have been subject to the same standards and have engaged in the same conduct</u> without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.  *Mitchell v. Toledo Hospital*, *supra*, 964 F.2d at 582.  By his own

---

[19]  The individuals that Plaintiff claims were treated more favorably are as follows:

1.  Bill Pisarisewski who once told Supervisor Sledge, "If you force me out we are going to go at it in a court of law."
2.  Ken Behm, who after being caught deviating off his route stated to his supervisor Steward C. Clark, "If you write me up for this we are going at it."
3.  Tim Yager, who once stated to another mail carrier, "It's a good day for a killing."
4.  Gary Vouda, who once told S. Erin that he would "kick his ass."
5.  G. Bruder, who once stated on the workroom floor, "It's a good day to die; want some C-4.  I'm a loser."
6.  Wally Hargrove, who made racial and demeaning statements.
7.  Mark Newman, a clerk, who once used profanity to a customer at the window saying "You son of a bitch."

Plaintiff's Aff., ¶ 69.

24

affidavit statements, however, Plaintiff cannot meet this standard.  Plaintiff cannot show

that the individuals identified by him all answered to the same supervisors

or engaged in the same conduct that he did.  At best, only one of the seven co-workers

identified by Plaintiff, Bill Pisarisewski, allegedly "threatened" Supervisor Sledge.

However, that "threat" was merely that he and Sledge would "go at it in a court of law" if

he were to be fired.  This, of course, is not the same immediate "we are going to go at it"

threat of physical assault made by Plaintiff to Sledge over his use of the steel.  The

conduct of the other six individuals is even more dissimilar.  Having failed to show that

any of his purported comparables engaged in the same or similar conduct with the same

supervisors and decision-makers, the Court finds that Plaintiff has failed to come forward

with sufficient evidence of pretext to rebut Defendant's legitimate non-retaliatory reason

for his discharge.

    For the foregoing reasons, the Court will GRANT Defendant's Motion for

Summary Judgment on Plaintiff's retaliation claim.

D.    <u>NON-DISCRIMINATION ISSUES</u>

    Although Plaintiff has not alleged in his Complaint any appeal of the non-

discrimination issues argued before the MSPB, in his Response Brief, he argues that

Administrative Judge Puglia abused her discretion when she determined that the MSPB

was precluded from re-examining the merits of Plaintiff's removal action (i.e., whether

there was just cause for his removal) by application of the doctrine of collateral estoppel.

In a mixed case, Plaintiff is entitled to *de novo* consideration of the discrimination claims. 5 U.S.C. § 7703(b)(2). *Kelliher v. Veneman*, 313 F.3d 1270, 1275 (11th Cir. 2002); *Carr v. Reno*, 23 F.3d 525, 528 (D.C. Cir. 1994); *Washington v. Garrett*, 10 F.3d 1421, 1428 (9th Cir. 1993); *Johnson v. Burnley*, 887 F.2d 471, 474 n.1 (4th Cir. 1989). However, judicial review of the nondiscrimination issues is limited to review of the administrative record. *See Kelliher*, 313 F.3d at 1275; *Washington*, 10 F.3d at 1428; *Johnson*, 887 F.2d at 474 n. 1. The standard of review applicable to the MSPB's decision on Plaintiff's removal is set forth at 5 U.S.C. § 7703(c), which provides that the MSPB's decision should be set aside if its findings or conclusions are found to be:

> (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

> (2) obtained without procedures required by law, rule, or regulation having been followed: or

> (3) unsupported by substantial evidence.

*See also Kelliher, supra*; *Barnes v. Small*, 840 F.2d 972, 979 (D.C. Cir. 1988).

In this case, relying on *Kroeger v. Bolger*, 865 F.2d 235 (Fed. Cir. 1988), Judge Puglia held that the doctrine of collateral estoppel precluded re-examination of the merits of Plaintiff's claim that his removal was not supported by just cause since that issue was fully litigated in his grievance arbitration before Arbitrator Goldman and Arbitrator Goldman sustained the agency action following a full hearing on the merits. Plaintiff argues that it was error for Judge Puglia to apply the collateral estoppel doctrine in his

26

case.

The doctrine of collateral estoppel precludes relitigation of an issue that (1) is identical to that in the previous action, (2) was actually litigated in the previous action, (3) the decision was one which was necessary to the outcome of the previous action, and (4) the party against whom the doctrine is being asserted was fully represented in the previous action. *Kroeger*, 865 F.2d at 239. The Court finds that all of these elements are satisfied with respect to the arbitrator's decision on Plaintiff's grievance of his suspension and removal from service. First, Plaintiff does not dispute that he was adequately represented at the arbitration by his NALC Union official. Further, it cannot be disputed that the issue presented to the MSPB as to whether the Postal Service had just cause to place Plaintiff on emergency suspension and ultimately remove him from service was the same issue grieved by Plaintiff and ultimately presented for arbitration before Arbitrator Goldman. *See* Arbitration Award, Defendant's Ex. 12 ("The Union grieved both the Emergency Placement and the Removal on the grounds that they were not for just cause and the present arbitration resulted." *Id.* at p. 5.) Nor can it be disputed that the arbitrator's decision on these issues was one that was necessary to the outcome of the arbitration.

Furthermore, contrary to Plaintiff's assertions, it is obvious from the face of the Arbitrator's Award that the specific  misconduct with which Plaintiff was charged -- disobeying a direct order and threatening a supervisor -- were actually litigated in the

arbitration along with the issue of whether such misconduct constitutes just cause for

emergency placement on suspension and termination.  In pertinent part, the Arbitration

Award states as follows:

On August 21, according to the Grievant's account of events, the
following took place:

Dave Sledge [the Grievant's Supervisor] told me to take my
personal belongings off a steel and I told him no.  Dave told
me that I had been given the talk before and to remove it.  I
told him that the steel was already in the building and I had
just put my stuff on it.  Dave then gave me a direct order to
remove my stuff from the steel.  I told him that we are not in
the military and we have already gone through this, there are
no such things as direct orders and I again told him no.  I then
asked him to look around that there were people not even on
the clock that had steels in the building.  Dave then told me
that he would take it out then and I told him if he did we
would go at it.

That account is substantially identical to the one given by the Postal
Service in the Emergency Placement and subsequent Removal that are the
subject of this arbitration.

The Service charges the Grievant with "repeated refusal to follow
instructions and a direct order. . . insubordinate conduct. . . [and making a]
threat to a supervisor.  Specifically, the Grievant was put on Emergency
Placement under 16.7 of the National Agreement and charged with
violations of:

ELM  661.53      Unacceptable Conduct
       666.1        Discharge of Duties
       666.2        Behavior and Personal Habits

as well as the following:

666.5  Obedience to Orders

.51   Protests: Employees must obey the instructions of their supervisors.  If an employee has reason to question the propriety of a supervisor's order, the individual will nevertheless carry out the order and immediately file a protest in writing to the official in charge of the installation, or appeal through official channels.

Administrative Support Manual

228.13       Disciplinary Action of Employees

Employees assaulting or threatening other employees or postal customers may be subject to remedial or disciplinary action, including discharge and prosecution under federal, state, or local laws.

General Order District #1 - Dischargeable Infractions

Some infractions, by the severity of their negative impact upon the employer/employee relationship constitute just cause for discharge, even for a single act.  These include, but are not limited to:

2.       Altercations (physical or verbal) with postal employees or customers

Postal Service Zero Tolerance Policy

Effective immediately, this policy places all employees on notice that threats, assaults, verbal berating or other acts of violence committed against other Postal employees or customers will result in disciplinary action, up to and including removal from the Postal Service.

* * *

The Union's argument rests on its claim that the Grievant was unfairly treated by his supervisor. * * * The Grievant's feeling that he was being treated unfairly. . . does not give him the right to disobey a direct order.  The principle "obey now, grieve later" is a fundamental tent of

29

arbitral law.

The Union then argues that the Grievant's statement was misunderstood. The Grievant is quoted in the Union's Opening Statement and elsewhere saying to his supervisor, "If you touch that steel, we're going at it."

I do not find that statement difficult to understand. In the context in which it was made, the statement means, "If you touch that steel, we are going to fight." It has no other meaning. The Union's claim that the Grievant meant he intended to file EEO charges and grievances against his supervisor if the supervisor moved the steel simply does not comport with the way the sentence is understood by speakers of English.

\* \* \*

In the cases supplied by the parties for my review, I found the following clearly articulated principles:

> Absent mitigating circumstances, termination is the sanction an employee risks as a result of insubordinate behavior. Absolute refusal to obey a clear-cut, direct order suggests that corrective discipline or further possible sanctions would have little chance of gaining an employee's attention. (Arbitrator Snow, WIN, 5HD 10755).

> Removal is the only appropriate penalty for threatening a supervisor in the workplace -- where, as here, mitigating circumstances have not been proved (Arbitrator Eyraud, SOC-3E-D 6600 quoted in Arbitrator Plant, H94T-1H-D 98013437).

In this case the Grievant refused to follow a simple request, refused again when that request was put in the form of an instruction and refused again when it was put to him as a direct order. Then, when his supervisor *acquiesced* to his refusal and agreed to perform the requested act himself, the Grievant threatened that if he did, they would "go at it". That series of events is inexcusable in an employment context. The record shows no mitigating circumstances exist.

30

>    The Grievant's statement is a threat of physical harm sufficient to
> justify Emergency Placement under Article 16.7.  The combination of his
> insubordination and his threatening language justifies removal under the
> cited provisions of the manuals and the National Agreement.

Defendant's Ex. 12, pp. 2-7.

The foregoing excerpt from the Arbitrator's Award makes clear that Administrative Judge Puglia correctly determined that all four of the elements of collateral estoppel were satisfied and, accordingly, precluded re-examination by the MSPB of the Plaintiff's claim that his removal was not supported by just cause.  *See Kroeger v. Bolger, supra* (giving collateral estoppel effect to a labor arbitrator's decision in an MSPB appeal).  Judge Puglia having committed no legal error in her application of the doctrine of collateral estoppel the Court finds no merit to Plaintiff's claim that the Administrative Judge abused her discretion in refusing to re-examine Plaintiff's removal claim.

## CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment be, and hereby is, GRANTED.  Accordingly,

IT IS FURTHER ORDERED that this case be DISMISSED, in its entirety, with prejudice.

SO ORDERED.

s/Gerald E. Rosen
Gerald E. Rosen
United States District Judge

Dated: December 15, 2005

I hereby certify that a copy of the foregoing document was served upon counsel of record on  December 15, 2005, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager